[No. 87656-8.   En Banc.]
Argued October 18, 2012.     Decided May 9, 2013.

RESIDENT ACTION COUNCIL, *Respondent*, v. THE SEATTLE HOUSING AUTHORITY, *Appellant*.

*Kenneth W. Masters* and *Shelby R. Frost Lemmel* (of *Masters Law Group PLLC*), for appellant.

*Meredith E. Childers* and *Eric Dunn* (of *Northwest Justice Project*), for respondent.

*Aviva Kamm* on behalf of Washington Coalition for Open Government, amicus curiae.

*Nicholas B. Straley* on behalf of Columbia Legal Services, amicus curiae.

*Mark K. Roe, Sarah J. Di Vittorio, James D. Iles,* and *Ramsey E. Ramerman* on behalf of Washington Association of Prosecuting Attorneys, Washington State Association of Municipal Attorneys, and Washington Association of Public Records Officers, amici curiae.

¶1 GONZÁLEZ, J. — This direct appeal concerns the public disclosure of Seattle Housing Authority (SHA) grievance hearing decisions pursuant to the Public Records Act (PRA), chapter 42.56 RCW. SHA hearing decisions contain

welfare recipients' personal information. This information is exempt from disclosure under the PRA, but the PRA requires redaction and disclosure of public records insofar as all exempt material can be removed. Accordingly, the PRA requires redaction of welfare recipients' exempt information contained in SHA's grievance hearing decisions. Applicable federal regulations do not exempt the hearing decisions from disclosure, nor do applicable federal regulations preempt the PRA. Thus, the trial court properly ordered SHA to produce the grievance hearing decisions pursuant to the redaction requirement of the PRA, properly ordered SHA to produce the responsive records in electronic format and to establish necessary policies and procedures to ensure compliance with the PRA, and properly awarded statutory damages. We affirm the trial court and award respondent Resident Action Council (RAC) its attorney fees on appeal.

## I. FACTS AND PROCEDURAL HISTORY

¶2 SHA is a local housing authority that provides federally subsidized public housing in Seattle. Disputes between individual tenants and SHA are resolved through a grievance hearing process resulting in a written decision from a hearing officer. Pursuant to applicable federal regulations, an unredacted copy of each decision is placed in the tenant's file at SHA and a separate redacted copy is placed in a central file. *See* 24 C.F.R. § 966.57(a). RAC is a group of SHA tenant leaders seeking copies of all SHA grievance hearing decisions dated June 17, 2007, or later. On June 17, 2010, RAC made a request under the PRA for copies of all such hearing decisions and also requested that such copies be provided in electronic format to minimize reproduction costs.

¶3 SHA produced redacted hard copies of the hearing decisions without explanation or comment. RAC then complained that SHA had failed to explain its redactions, that

the hearing decisions were inconsistently redacted and some of the decisions had been overly redacted, that SHA had included numerous duplicates and nonresponsive documents (and was seeking compensation for production of those documents), and that the documents had been delivered in hard copy with a "messenger fee" rather than in electronic format as requested. SHA failed to respond.

¶4 RAC then sought relief in superior court under the PRA, seeking costs, fees, and statutory damages, and an injunction requiring SHA to produce copies of the hearing decisions (without any unauthorized redactions and in electronic format). RAC also sought an injunction ordering SHA to establish (1) published procedures for requesting documents, (2) a published list of relevant PRA exemptions, (3) a policy for redacting grievance hearing decisions, (4) a policy for providing explanations for withholding or redacting documents, and (5) a policy of providing records in electronic format when requested. SHA argued in part that the unredacted hearing decisions are not subject to the disclosure or redaction requirements of the PRA and that it already disclosed the redacted decisions in full.

¶5 The trial court granted RAC the relief it requested. The trial court first ordered SHA to produce "all grievance hearing decisions subject to RAC's request" with "[o]nly names and identifying information of SHA tenants . . . redacted," with a code or marks to distinguish among redacted items, and in electronic format. Clerk's Papers at 171. In a subsequent order, the trial court also directed SHA to pay statutory damages at a rate of $25 per day, to publish procedures for requesting records, to publish a list of relevant exemptions, to establish a policy for redacting grievance hearing decisions, to establish a policy for providing written explanations whenever withholding records under the PRA, and to provide electronic records when requested.

¶6 SHA appealed, and the case was certified and transferred to this court. SHA argues (1) that the unredacted

hearing decisions within individual tenant files are exempt from disclosure under the PRA and thus, the only relevant documents subject to disclosure were produced without (additional) redaction; (2) that it has no obligation to produce documents in electronic format; (3) that it has no duty to explain redactions that are made pursuant to federal regulations; (4) that it has wide discretion in determining how to redact documents under said federal regulations; and (5) that it has no duty to publish procedures for redactions conducted pursuant to federal regulations. RAC disagrees and seeks fees on appeal pursuant to RCW 42.56.550(4). *See Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 271, 884 P.2d 592 (1994) (*PAWS* II).

## II. STANDARD OF REVIEW

¶7 Agency action taken or challenged under the PRA is reviewed de novo. RCW 42.56.550(3); *PAWS* II, 125 Wn.2d at 252. The burden is on the agency to establish that an exemption to production applies under the PRA. RCW 42.56.550(1). A trial court's decision to grant an injunction and its decision regarding the terms of the injunction are reviewed for abuse of discretion. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000).

## III. ANALYSIS

¶8 Under the broad provisions of the PRA, SHA's unredacted hearing decisions must be redacted and produced. SHA operates as a local agency in cooperation with the federal Department of Housing and Urban Development (HUD). Although SHA is subject to limited federal regulations, SHA also remains subject to state laws such as the PRA. The PRA promotes open government by requiring disclosure of public records upon request. The PRA applies to SHA's unredacted grievance decisions, and thus the trial court properly ordered SHA to redact and produce those documents. The trial court also acted within its discretion

when it ordered electronic production and when it required SHA to establish necessary policies and procedures to ensure compliance with the PRA. The trial court also properly awarded statutory damages.

## A. Legal Background

### 1. Local Housing Authorities and Cooperative Federalism

¶9  SHA is a local housing authority that operates within an established framework of federal and state cooperation. The United States Housing Act of 1937 allows for federal assistance to local housing authorities while maintaining and promoting state and local control. *See* 42 U.S.C. § 1437f(b)(1) (authorizing "annual contributions contracts" with local housing authorities); 42 U.S.C. § 1437(a)(1)(C) (establishing policy of "vest[ing] in public housing agencies that perform well[ ] the maximum amount of responsibility and flexibility in program administration"). This sort of framework, "in which state agencies are given broad responsibility and latitude in administering welfare assistance programs," has been described as a form of " 'cooperative federalism.' " *Turner v. Perales*, 869 F.2d 140, 141 (2d Cir. 1989); *see also King v. Smith*, 392 U.S. 309, 316-17, 88 S. Ct. 2128, 20 L. Ed. 2d 1118 (1968); *Shapiro v. Thompson*, 394 U.S. 618, 645, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969) (Warren, C.J., dissenting) ("Federal entry into the welfare area can . . . be best described as a major experiment in 'cooperative federalism,' combining state and federal participation to solve the problems of the depression." (citation omitted)), *overruled on unrelated grounds in Edelman v. Jordan*, 415 U.S. 651, 671, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). The Washington State Legislature authorized the creation of local housing authorities such as SHA, *see* RCW 35.82.040, and also has authorized such local housing authorities to "do any and all things necessary or desirable to secure the financial aid or cooperation of the federal government," RCW 35.82.200(1). Accordingly, SHA has co-

ordinated with HUD to receive federal assistance and is now subject to certain federal regulations. *See, e.g., Lankford v. Sherman,* 451 F.3d 496, 510 (8th Cir. 2006) (noting that in "a system of cooperative federalism . . . once the state voluntarily accepts the conditions imposed by Congress, the Supremacy Clause obliges it to comply with federal requirements").

¶10 SHA's dispute resolution process must comply with relevant federal regulations. Specifically, disputes between individual tenants and SHA must be resolved through a grievance hearing process established pursuant to 42 U.S.C. § 1437d(k) and 24 C.F.R. § 966. Under 24 C.F.R. § 966.57, the secretary of HUD has required public housing authorities (PHAs) such as SHA to ensure that disputes are resolved by hearing officers who must provide written decisions. The federal regulations also require PHAs to ensure that one copy of each written decision is "retain[ed] . . . in the tenant's folder" and another copy "with all names and identifying references deleted" is on file and "made available for inspection by a prospective complainant, his representative, or the hearing panel or hearing officer." 24 C.F.R. § 966.57(a). A "complainant" is defined as "any tenant whose grievance is presented to the PHA," and a "grievance" is defined as "any dispute which a tenant may have [under] the individual tenant's lease or PHA regulations . . . ." 24 C.F.R. § 966.53(a), (b). Pursuant to these regulations, SHA retains unredacted copies of hearing decisions in individual tenant files and also retains a central file of redacted hearing decisions. The dispute in this case arises out of RAC's request for disclosure of these documents.

¶11 SHA remains subject to state law. State law establishes local housing authorities in the first place, defines their powers and obligations, and addresses various ancillary matters related to their operation. *See* ch. 35.82 RCW (housing authorities law). Thus, state law applies to SHA except insofar as federal law has preempted a given state law. *See, e.g., PAWS II,* 125 Wn.2d at 265.

## 2. Disclosure and Production under the PRA

¶12 The PRA is a "strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). The PRA is to be "liberally construed and its exemptions narrowly construed . . . to assure that the public interest will be fully protected." RCW 42.56.030. Our interpretation of the PRA's provisions will continue to be grounded in the PRA's underlying policy and standard of construction. We will also avoid absurd results. *Hangartner v. City of Seattle*, 151 Wn.2d 439, 448, 90 P.3d 26 (2004). In this difficult area of the law, we endeavor to provide clear and workable guidance to agencies insofar as possible. *See Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405*, 164 Wn.2d 199, 218-19, 189 P.3d 139 (2008).

¶13 The PRA requires state and local agencies to "make available for public inspection and copying all public records, unless the record falls within the specific exemptions of [the PRA] or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56-.070(1). A "public record" is defined broadly to include "any writing containing information relating to the conduct of government or [a governmental function]" that is "prepared, owned, used, or retained" by any state or local agency. RCW 42.56.010(3); *see also Confederated Tribes of Chehalis Reservation v. Johnson*, 135 Wn.2d 734, 746-47, 958 P.2d 260 (1998).

¶14 The PRA requires each relevant agency to facilitate the full disclosure of public records to interested parties. An agency must publish its methods of disclosure and the rules that will govern its disclosure of public records. RCW 42.56.040(1). A requester cannot be required to comply with any such rules not published unless the requester receives actual and timely notice. RCW 42.56-.040(2). More generally, an agency's applicable rules and regulations must be reasonable and must provide full

public access, protect public records from damage or disorganization, and prevent excessive interference with other essential functions of the agency. RCW 42.56.100. The agency's rules and regulations also must "provide for the fullest assistance to inquirers and the most timely possible action on requests for information." *Id.*; *see also* RCW 42.56.520 (agency must respond promptly but can notify requester it needs a reasonable amount of time to determine appropriate further response). An agency must explain and justify any withholding, in whole or in part, of any requested public records. RCW 42.56.070(1), .210(3), .520. Silent withholding is prohibited. *Rental Hous. Ass'n v. City of Des Moines*, 165 Wn.2d 525, 537, 199 P.3d 393 (2009); *PAWS II*, 125 Wn.2d at 270. Finally, agency actions taken or challenged under the PRA are subject to de novo review, and any person "who prevails against an agency" is awarded costs and fees and, in the discretion of the court, a statutory penalty. RCW 42.56.550(4).

¶15 The PRA's mandate for broad disclosure is not absolute. The PRA contains numerous exemptions that protect certain information or records from disclosure, and the PRA also incorporates any "other statute" that prohibits disclosure of information or records. *See* RCW 42.56.070, .230-.480, .600-.610. The PRA's exemptions are provided solely to protect relevant privacy rights or vital governmental interests that sometimes outweigh the PRA's broad policy in favor of disclosing public records. *See Limstrom v. Ladenburg*, 136 Wn.2d 595, 607, 963 P.2d 869 (1998).

¶16 Exemptions are to be narrowly construed and limited in effect. First, the PRA's purpose of open government remains paramount, and thus, the PRA directs that its exemptions must be narrowly construed. RCW 42.56.030. Second, the PRA provides that exemptions "are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can

be deleted from the specific records sought." RCW 42-.56.210(1); *see also* RCW 42.56.070. We have interpreted this redaction provision to mean that an agency must produce otherwise exempt records insofar as redaction renders any and all exemptions inapplicable. *See PAWS* II, 125 Wn.2d at 261 ("Portions of records which do not come under a specific exemption must be disclosed."); *Hearst*, 90 Wn.2d at 132 (noting that exemptions are "inapplicable to the extent that exempt materials in the record 'can be deleted'" (quoting former RCW 42.17.310(2) (1977))). If it is information within a record that is exempted, such information usually can be effectively redacted. On the other hand, if a type of record is exempted, then meaningful redaction generally is impossible, unless redaction actually can transform the record into one that is outside the scope of the exemption. For example, a document containing attorney work product may be exempted as a "[r]ecord[ ] that . . . would not be available . . . under the rules of pretrial discovery," RCW 42.56.290, but redaction might transform the record into one that actually would be available in pretrial discovery and, thus, into a different type of record—one that no longer falls under the relevant exemption and that would have to be disclosed in redacted form. *See Sanders v. State*, 169 Wn.2d 827, 854, 858, 240 P.3d 120 (2010). As to most record exemptions, however, such transformation will be impossible. *See, e.g.*, RCW 42.56.370 (exempting "[c]lient records maintained by an agency that is a domestic violence program"). Finally, even records that are otherwise exempt may be inspected or copied if a court finds "that the exemption of such records is clearly unnecessary to protect any individual's right of privacy or any vital governmental function." RCW 42.56.210(2); *see Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 567-68, 618 P.2d 76 (1980) (burden shifts to the party seeking disclosure to establish exemption is clearly unnecessary).

¶17 The PRA contains numerous information and record exemptions developed over time and narrowly tailored to specific situations in which privacy rights or vital governmental interests require protection. In all, the PRA currently contains 141 exemptions. *See* RCW 42.56.230-.480, .600-.610. The vast majority of these exemptions are *categorical*, exempting without limit a particular type of information or record. *See, e.g.*, RCW 42.56.230(5) (exempting "debit card numbers"). A limited number of these exemptions are *conditional*, exempting a particular type of information or record but only insofar as an identified privacy right or vital governmental interest is demonstrably threatened in a given case. *See, e.g.*, RCW 42.56.240(2) (exempting "[i]nformation revealing the identity of persons who are . . . victims of crime . . . if disclosure would endanger any person's life, physical safety, or property").

¶18 In the case of a categorical exemption, the legislature has established a presumption that the specified type of information or record generally warrants exemption. That presumption can be overcome only if a court finds the exemption is "clearly unnecessary" to protect any privacy rights or vital governmental interests in a particular case. RCW 42.56.210(2). Otherwise, an agency's application of a categorical exemption must be upheld so long as the agency has accurately identified the nature of the specified information or record. *See, e.g., Lindeman v. Kelso Sch. Dist. No. 458*, 162 Wn.2d 196, 201, 172 P.3d 329 (2007).

¶19 In the case of a conditional exemption, specified information or records must be protected, but in furtherance of only certain identified interests, and only insofar as those identified interests are demonstrably threatened in a given case. Application of a conditional exemption will be upheld if the agency has accurately identified the nature of the specified information or record *and* properly determined that an identified interest must be protected in the given case. *See, e.g., Bellevue John Does*, 164 Wn.2d at 210.

¶20 The distinction between categorical and conditional exemptions is sometimes blurry, for numerous reasons. First, determining whether specific information or records fall within a given categorical exemption may well require a consideration of privacy or governmental interests. After all, our interpretation of the scope of a given categorical exemption often will depend at least in part on its apparent purposes. *See Hearst*, 90 Wn.2d at 133. And some categorical exemptions distinguish types of information or records based on characteristics tied up with privacy or governmental interests. *See, e.g., Lindeman*, 162 Wn.2d at 202 (defining exempted "personal information" as "information peculiar or proper to *private* concerns" (emphasis added)). If the application of a seemingly categorical exemption ever actually depends upon a case-by-case evaluation of the need to protect a particular privacy right or vital governmental interest, the exemption then acts as a conditional exemption. Second, in the context of conditional exemptions, determining the need to protect an identified interest is sometimes entrusted to an agency's discretion, which renders the conditional exemption effectively categorical on review. *See Newman v. King County*, 133 Wn.2d 565, 574-75, 947 P.2d 712 (1997) ("This exemption allows the law enforcement agency, not the courts, to determine what information, if any, is essential to solve a case."). Finally, some exemptions are ambiguous and thus difficult to classify. *See, e.g.*, RCW 42.56.300(1) (exempting "[r]ecords, maps, or other information identifying the location of archaeological sites *in order to* avoid the looting or depredation of such sites" (emphasis added)); RCW 42.56.420(3) (exempting "[i]nformation compiled . . . in the development of . . . comprehensive safe school plans . . . to the extent that they identify specific vulnerabilities").

¶21 The blurry distinction between categorical and conditional exemptions should not be surprising, given that the

PRA is a complex and often confusing statutory framework that is the result of numerous legislative enactments and now contains over 140 varied exemptions. In most instances, however, the distinction does remain clear. *Compare* RCW 42.56.240(6) (exempting the "statewide gang database"), *and* RCW 42.56.250(1) (exempting "[t]est questions, scoring keys, and other examination data used to administer a license, employment, or academic examination"), *with* RCW 42.56.230(4)(b) (exempting "[i]nformation required of any taxpayer . . . if the disclosure [would] violate the taxpayer's right to privacy or result in unfair competitive disadvantage"), *and* RCW 42.56.270(1) (exempting "[v]aluable formulae . . . when disclosure would produce private gain and public loss"). In every instance, the relevant question is simply whether applying the exemption requires a particularized finding of the need to protect a privacy right or a vital governmental interest. If so, the exemption is conditional and applies if and only if there is such a need in the given case; if the exemption is not conditional, then the exemption is categorical and it applies outright to all information or records included within the general category specified.

¶22 In sum, an agency facing a request for disclosure under the PRA should take the following steps: First,

determine whether any public records are responsive to the request—if not, the PRA does not apply. Second, insofar as certain public records are responsive, determine whether any exemptions apply generally to those types of records or to any of the types of information contained therein. An agency should be sure to consider any specified limitations to an exemption when discerning the exemption's scope of potential application. If no exemption applies generally to the relevant types of records or information, the requested public records must be disclosed. Third, if an exemption applies generally to a relevant type of information or record, then determine whether the exemption is categorical or conditional. If the exemption is conditional and the condition is not satisfied in the given case, the records must be disclosed. Fourth, if the exemption is categorical, or if the exemption is conditional and the condition is satisfied, the agency must consider whether the exemption applies to entire records or only to certain information contained therein. If the exemption applies only to certain information, the agency must consider whether the exempted information can be redacted from the records such that no exemption applies (and some modicum of information remains). If the exemption applies to entire records, those records are exempted and need not be disclosed, unless redaction can transform the record into one that is not exempted (and some modicum of information remains). If effective redaction is possible, records must be so redacted and disclosed. Otherwise, disclosure is not required under the PRA. These are the indispensable steps that an agency should take in order to properly respond to a PRA request. These steps are visually represented in the flow chart contained in figure 1.

**Figure 1.** Determining whether disclosure is required under the PRA

¶23 The "clearly unnecessary" inquiry under RCW 42.56.210(2) serves in rare cases to judicially override exemptions that otherwise apply to a specified type of information or record. The standard is quite high and is relevant to all categorical exemptions, but only some conditional exemptions. In the case of a categorical exemption, all information or records of a specified nature are presumed exempt unless a court finds the exemption clearly unnecessary in a given instance. In the case of a conditional exemption, if the need to protect an identified interest is reviewed de novo, a court will not consider whether the conditional exemption is "clearly unnecessary" because the conditional exemption will be applicable in the first place only if it *is* necessary to protect an identified interest. However, if determining the need to protect an identified interest is vested in the discretion of an agency, it may be necessary for a court to consider whether the conditional exemption is "clearly unnecessary" under the circumstances, or in other words, whether the agency has abused its wide discretion.

¶24 The foregoing discussion should provide adequate guidance to agencies such as SHA in responding to requests for public records. Taking into consideration both the relevant context of cooperative federalism and the overarching framework of the PRA, we now turn to whether SHA complied with the PRA in responding to RAC's request for grievance hearing decisions.

B. Application

¶25 SHA violated the PRA. Initially, the *silent* withholding of the unredacted grievance hearing decisions was a violation. But even beyond SHA's improper silence, the withholding itself was also in violation of the PRA. The heart of SHA's position—that the unredacted grievance hearing decisions within tenant files are *entirely* exempted from redaction or disclosure because they contain personal information of welfare recipients—is untenable. These public records do contain exempted information about welfare

recipients, but the records remain subject to disclosure insofar as redaction can render all exemptions inapplicable. Relevant federal regulations do not prohibit production of the documents or preempt the PRA. Thus, SHA must redact and produce these documents pursuant to the PRA. The trial court acted within its broad discretion in ordering SHA to produce responsive documents in electronic format, in ordering SHA to establish policies and procedures necessary to ensuring compliance with the PRA, and in awarding statutory damages.

### 1. PRA Redaction Requirement

¶26 SHA hearing decisions are public records subject to the PRA's disclosure requirements. The hearing decisions relate to the provision of public housing, and SHA (a local agency) retains the documents in individual tenant files. Thus, the hearing decisions are public records. *See* RCW 42.56.010(3). SHA is correct that the hearing decisions are exempt from blanket production insofar as they include "[p]ersonal information in . . . files maintained for . . . welfare recipients." RCW 42.56.230(1). The parties do not dispute that the grievance hearing decisions do contain such information. But the PRA requires production of otherwise exempted records insofar as exempt information can be deleted. *See* RCW 42.56.070(1), .210(1).

¶27 SHA argues that the PRA's redaction requirement simply does not apply to records containing personal information and maintained in welfare-recipient files. SHA reasons that such information is not subject to redaction because it is exempted categorically, unlike, for example, "[p]ersonal information in files maintained for [public] employees," which is exempted "to the extent that disclosure would violate their right to privacy." RCW 42.56-.230(3). SHA's argument is thus that the PRA's redaction requirement, which applies only to information "the disclosure of which would violate personal privacy or vital governmental interests," RCW 42.56.210(1), does not apply to any categorical exemptions and applies only to conditional

exemptions (i.e., exemptions that explicitly identify relevant privacy rights or governmental interests). SHA's interpretation of the PRA reflects a failure to appreciate the overall framework of the PRA, and SHA is clearly wrong, for numerous reasons.

¶28 First, SHA ignores that *all* exemptions, including categorical exemptions, are intended to protect personal privacy and governmental interests. *See Limstrom*, 136 Wn.2d at 607; RCW 42.56.210(2).

¶29 Second, SHA ignores that the redaction provision in the PRA explicitly lists only two exemptions that are not subject to the PRA's redaction requirement and the welfare recipient exemption is not on that list. RCW 42.56.210(1).

¶30 Third, the two exemptions listed as not being subject to the redaction requirement are themselves categorical, and explicitly removing those provisions from the scope of the redaction requirement would have been superfluous if SHA's interpretation were correct.

¶31 Fourth, we already have held that the PRA's command to redact information "that would violate personal privacy or governmental interests" simply means that an agency must redact to overcome any and all relevant exemptions, insofar as possible. *See Hearst*, 90 Wn.2d at 132-33; *PAWS* II, 125 Wn.2d at 261. Requiring anything more or different would be too complicated, unworkable, and time-consuming for agencies operating under the PRA. Insofar as redaction can render all exemptions inapplicable, the PRA requires disclosure.

¶32 Fifth, we already have applied the redaction requirement to numerous categorical exemptions. *See Sanders*, 169 Wn.2d at 858; *Hearst*, 90 Wn.2d at 132; *see also Prison Legal News, Inc. v. Dep't of Corr.*, 154 Wn.2d 628, 645, 115 P.3d 316 (2005). In fact, perhaps most importantly, we already have explained that the redaction requirement applies to *the very exemption provision at issue in this case. See Oliver*, 94 Wn.2d at 567.

¶33 Sixth, if SHA's interpretation were correct, only a small number of the PRA's numerous exemptions (that is, only conditional exemptions) would be subject to the redaction requirement, contrary to the overriding purpose of the PRA and the legislature's admonition that the PRA "shall be liberally construed and it exemptions narrowly construed . . . ." RCW 42.56.030.

¶34 Seventh, SHA provides no explanation of why the legislature would want to exempt absolutely from disclosure any records initially containing exempt personal information—even if redaction could render the exemption inapplicable. SHA's reading makes no sense, particularly when considering the wide range of categorical exemptions in the PRA, some of which are quite limited in scope. For example, RCW 42.56.350(1) exempts certain "federal Social Security number[s] . . . maintained in the files of the department of health," and under SHA's interpretation, any record containing such a Social Security number would be absolutely exempted from production, notwithstanding the fact that the Social Security number could simply be redacted. If the legislature actually had been interested in protecting the entire records in question, presumably it would have said so.

¶35 SHA's suggested approach to exemption and redaction is untenable. If redaction sufficiently protects privacy and governmental interests—that is, if redaction can render all exemptions inapplicable—disclosure is required. Thus, SHA's unredacted grievance hearing decisions are not absolutely exempt from production and remain subject to the PRA's redaction requirement.

### 2. Federal Exemption or Preemption

¶36 Having rejected SHA's untenable interpretation of the PRA, we now consider the significance of applicable federal regulations because SHA's grievance hearing decisions are created pursuant to federal law. The applicable federal regulations do not exempt the unredacted

grievance hearing decisions from disclosure under the PRA. Nor do the applicable regulations preempt the PRA under the supremacy clause of the federal constitution. The PRA thus applies to the unredacted grievance hearing decisions, which are public records, and mandates redaction and disclosure.

¶37 Applicable federal regulations do not exempt the grievance hearing decisions from public disclosure. This inquiry is relevant because the PRA exempts from disclosure records that are protected by federal regulations. *See Ameriquest Mortg. Co. v. Office of Att'y Gen.*, 170 Wn.2d 418, 439-40, 241 P.3d 1245 (2010); RCW 42.56.070. In this case, applicable federal regulations establish only procedural minimums, requiring each housing authority to provide redacted copies of prior decisions to assist tenants facing imminent adverse action—the regulations do not prohibit or otherwise regulate disclosure of public records. Specifically, 24 C.F.R. § 966.57(a) provides that each written hearing decision "shall be sent to . . . the PHA," and the PHA "shall retain a copy of the decision in the tenant's folder" and retain another copy "with all names and identifying references deleted" on file and "made available for inspection by a prospective complainant, his representative, or the hearing panel or hearing officer." This regulation does not prohibit disclosure in any way; it merely ensures a limited form of disclosure to a limited class of persons in order to promote fairness within each housing authority's grievance hearing process. In the context of cooperative federalism, this minimum requirement allows each state agency to conduct the rest of its disclosure practices in accordance with relevant state law. *See* 42 U.S.C. § 1437(a)(1)(C). In some states, disclosure of such materials might be entirely prohibited; in that case, the federal regulation ensures a certain type of disclosure to further the grievance hearing process while allowing the state agency to otherwise restrict access, thus causing a minimal intrusion upon state and local laws. By the same token, the regulation does not

prevent SHA from disclosing grievance hearing documents in accordance with the PRA. HUD promulgated this regulation without commenting on its particular significance. *See* 40 Fed. Reg. 33,406, 33,406-08 (Aug. 7, 1975). In related contexts, however, HUD has made clear that it intends for state laws to generally govern disclosure and production of housing authority documents. *See* 56 Fed. Reg. 51,560, 51,566 (Oct. 11, 1991) ("The statute and rule do not purport to establish a Federal privilege against discovery of directly relevant PHA documents . . . . However, the statute and rule also do not override other independently recognized privileges."); *see also* 53 Fed. Reg. 33,216, 33,281 (Aug. 30, 1988) ("The rule does not disturb the PHA's right to deny production of privileged documents in accordance with State law . . . . At the same time, however, the rule does not establish . . . any rules governing the circumstances in which a privilege arises. Rather, the rule defers to State law . . . and therefore to State policy underlying the grant or denial of a privilege."), *withdrawn on other grounds*, 53 Fed. Reg. 44,876 (Nov. 7, 1988). We have held that exemptions outside of the PRA must be explicit, and there is no explicit exemption here. *See PAWS* II, 125 Wn.2d at 262.

¶38 Nor do the applicable federal regulations preempt the PRA. Federal preemption occurs only if (1) federal law expressly preempts state law, (2) Congress has occupied an entire field of regulation to the exclusion of any state laws, or (3) state law conflicts with federal law due to either impossibility of joint compliance or state law acting as an obstacle to the accomplishment of a federal purpose. *See PAWS* II, 125 Wn.2d at 265. In this case there is no express preemption and, given the nature of cooperative federalism, no field preemption either. There is also no conflict preemption, given that the applicable regulations do not prohibit disclosure of the unredacted grievance hearing decisions and the PRA does not act as an obstacle to any federal purpose. There is a strong presumption against finding that federal law has preempted state law. *State v.*

*Kalakosky*, 121 Wn.2d 525, 546, 852 P.2d 1064 (1993). Further, " 'the case for federal preemption becomes a less persuasive one' " within a system of cooperative federalism, where " 'coordinated state and federal efforts exist within a complementary administrative framework,' " as in this case. *Washington v. Bowen*, 815 F.2d 549, 557 (9th Cir. 1987) (quoting *N.Y. Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 421, 93 S. Ct. 2507, 37 L. Ed. 2d 688 (1973)). The PRA applies to SHA's grievance hearing decisions.

¶39 In sum, SHA's unredacted grievance hearing decisions are subject to disclosure under the PRA. The documents are public records that are subject to the PRA's redaction requirement. Applicable federal regulations neither exempt the documents from disclosure nor preempt the operation of the PRA. Thus, SHA is obligated to produce the grievance hearing decisions, redacted to exclude only personal information of welfare recipients for whom the documents are maintained.

*3. Injunctive Relief*

¶40 The trial court did not abuse its discretion in ordering injunctive relief. The trial court ordered SHA to produce properly redacted copies of the grievance hearing decisions in electronic format. The trial court also ordered SHA to publish procedures regarding public records requests; to publish a list of applicable exemptions; and to establish policies governing redaction, explanations of withholding, and electronic records. The trial court acted within its "broad discretionary power to shape and fashion injunctive relief to fit the particular facts, circumstances, and equities of the case before it." *Brown v. Voss*, 105 Wn.2d 366, 372, 715 P.2d 514 (1986) (emphasis omitted).

¶41 An injunction is a remedy that " 'should be used sparingly and only in a clear and plain case.' " *Kucera*, 140 Wn.2d at 209 (quoting 42 AM. JUR. 2D *Injunctions* § 2, at 728 (1969)). A party seeking an injunction must show (1) a clear legal or equitable right, (2) a well-grounded fear of imme-

diate invasion of that right, and (3) actual and substantial injury as a result. *Wash. Fed'n of State Emps. v. State*, 99 Wn.2d 878, 888, 665 P.2d 1337 (1983). On appellate review, a "trial court's decision to grant an injunction and its decision regarding the terms of the injunction are reviewed for abuse of discretion." *Kucera*, 140 Wn.2d at 209. Further, a trial court's decision "is presumed to be correct and should be sustained absent an affirmative showing of error." *State v. Wade*, 138 Wn.2d 460, 464, 979 P.2d 850 (1999).

¶42 The trial court did not abuse its discretion. RAC has a clear right to appropriate production of requested documents, SHA has refused to produce those documents, and RAC remains without the public records it has requested. On numerous occasions we have allowed detailed "disclosure orders" in PRA cases to remedy an agency's failure to comply with the PRA. *In re Rosier*, 105 Wn.2d 606, 618, 717 P.2d 1353 (1986); *see also, e.g.*, *PAWS II*, 125 Wn.2d at 250; *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 792, 801, 791 P.2d 526 (1990).

¶43 Ordering SHA to undertake particular redactions and then to produce the redacted documents in a particular format was a legitimate way for the trial court to resolve the precise controversy before it, which arose out of RAC's request for the documents in question and SHA's failure to respond appropriately. RAC has continued to express its preference for electronic copies, and SHA has acknowledged that producing electronic copies costs SHA no more than producing hard copies.

¶44 Neither party challenges the trial court's instructions regarding the precise redactions to be made in this case. Thus, without directly addressing that issue, we affirm the trial court's decision that under the PRA, SHA must redact the names and identifying information of all SHA tenants from the grievance hearing decisions.

¶45 The trial court also acted within its discretion in ordering SHA to publish procedures regarding public records requests; to publish a list of applicable exemptions;

and to establish policies governing redaction, explanations of withholding, and electronic records. SHA's total failure to establish reasonable and effective policies and procedures to govern disclosure of public records was in violation of the PRA, *see* RCW 42.56.040, .070, clearly contributed to SHA's failure to adequately respond to RAC's immediate request for public records, and would contribute to similar failures going forward. The trial court thus found it necessary to order SHA to establish such policies and procedures in order to ensure that RAC was provided complete relief. *See Dare v. Mt. Vernon Inv. Co.*, 121 Wash. 117, 120, 208 P. 609 (1922) ("[A] court of equity . . . has the right to grant such ancillary or incidental relief as will be necessary to make the relief sought complete."). SHA has not affirmatively shown that this was an abuse of discretion.

¶46 In sum, the trial court acted within its discretion in ordering SHA to properly redact and electronically produce the grievance hearing decisions that RAC has requested and to establish needed policies and procedures to govern proper disclosure of public records.

*4. Statutory Damages and Fees*

¶47 We affirm the trial court's award of statutory damages. SHA does not dispute the amount of that award, only whether statutory damages were authorized at all. Because SHA did violate the PRA, the award of statutory damages was indeed authorized. *See* RCW 42.56.550(4).

¶48 We also award RAC its attorney fees on appeal. Under the PRA, any person who "prevails against an agency" in seeking the right to inspect or copy records "shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." *Id.* This applies to fees incurred on appeal. *See, e.g., PAWS* II, 125 Wn.2d at 271.

IV. CONCLUSION

¶49 We uphold the trial court's orders requiring SHA to redact and disclose the grievance hearing decisions in

electronic format, directing SHA to establish necessary policies and procedures to ensure compliance with the PRA, and awarding RAC statutory damages. We also award fees to RAC on appeal. The matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

MADSEN, C.J.; C. JOHNSON, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ; and Korsmo J. PRO TEM., concur.

After modification, further reconsideration denied January 10, 2014.