# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2018 MAY 14 AM 11: 19

| | |
|---|---|
| RICHARD LEE, | DIVISION ONE |
| Appellant, | No. 75815-2-I |
| v. | |
| CITY OF SEATTLE, SEATTLE POLICE DEPARTMENT, COURTNEY LOVE COBAIN, and FRANCES BEAN COBAIN, | |
| Respondents, | UNPUBLISHED OPINION |
| and | |
| COURTNEY LOVE COBAIN and FRANCES BEAN COBAIN, | |
| Cross-Claimants, | |
| v. | |
| CITY OF SEATTLE, SEATTLE POLICE DEPARTMENT, | |
| Cross-Claim Defendants. | FILED: May 14, 2018 |

DWYER, J. — Richard Lee appeals from the trial court's order granting summary judgment in favor of the City of Seattle and the Seattle Police Department (collectively the City). On appeal, Lee contends that the trial court erred by concluding that the photographs and documents that he requested were exempt from disclosure. Also at issue is the trial court's order granting summary

judgment in favor of cross-claimants Courtney Love Cobain and Frances Bean Cobain (the Cobains) and permanently enjoining the City from disclosing, disseminating, releasing, or distributing any death-scene photographs not previously disclosed. We affirm the trial court's orders.

I

Kurt Cobain, the lead singer of the band "Nirvana," was discovered dead on April 8, 1994. The City investigated Mr. Cobain's death, took numerous photographs of his body, and concluded that the cause of death was a self-inflicted gunshot wound.

Richard Lee is a local conspiracy theorist who believes that Mr. Cobain was murdered. Lee visited Mr. Cobain's residence on the day that his body was discovered and subsequently began creating news and documentary material for his public access television program. Lee aired his first broadcast concerning Mr. Cobain's death five days after the discovery of his body. Since then, Lee has devoted hundreds of hours to covering what he believes to be the murder of Mr. Cobain. Lee has made numerous requests to the City for documents related to the death of Mr. Cobain.

In 2014, the City asked cold-case Detective Michael Ciesynski to review the investigative file on Mr. Cobain's death. Ciesynski located four undeveloped rolls of film in the police file and subsequently had them developed.[1] Most of these photographs contained death-scene images of Mr. Cobain's body.

---

[1] Ciesynski stated in his declaration that it is not unusual to find undeveloped film in old case files, particularly when the case did not lead to criminal charges.

Following his review, Ciesynski concluded that the determination of suicide was correct.

On March 20, 2014, Lee submitted a Public Records Act[2] (PRA) request, seeking the entirety of the Cobain investigative file. The City provided two installments of records to Lee. It first furnished him with 37 photographs from the investigative file and later provided him with the remaining documents in the file. The City also sent Lee an exemption log that explained which documents or portions of documents the City had withheld from production and the reasons for exemption or redaction.

Lee sued the City on March 31, 2014. That lawsuit was dismissed on procedural grounds on July 31, 2015. That same day, Lee filed a new PRA request for "ANY AND ALL DOCUMENTS RELATED TO the March, 2014 effort to 'reopen' or 'examine' [ ] the Kurt D. Cobain death case, including of course, ALL OF THE PHOTOGRAPHIC EVIDENCE in this case." The City responded by providing Lee with the same documents that it had provided pursuant to the March 20, 2014 request, as well as a copy of the exemption log.[3]

On April 15, 2016, the Cobains were granted intervention in this suit. The City and the Cobains moved for summary judgment on the question of whether the death-scene photographs should be disclosed. The City sought a ruling that the death-scene images were exempt from disclosure pursuant to the PRA, RCW 42.56.240(1).[4] The Cobains sought to permanently enjoin the City from releasing

---

[2] Ch. 42.56 RCW.
[3] On March 16, 2016, the City released five additional photographs that were taken in June 2015 and placed in the investigative file in March 2016.
[4] That statute exempts from public inspection:

the death-scene images pursuant to their privacy rights under Washington common law and the Fourteenth Amendment to the United States Constitution.

The trial court granted both motions. The trial court ruled that the disclosure of the death-scene photographs would violate the Cobains' substantive due process rights under the Fourteenth Amendment. The trial court also ruled that the death-scene photographs were exempt under the PRA.[5] The trial court also granted the City's subsequent motion for summary judgment, concluding that the other documents withheld or redacted by the City were categorically exempt from disclosure. Lee appeals.

II

As a preliminary matter, it is prudent to discuss the import of the trial court's due process holding.

A

Pursuant to the Rules of Appellate Procedure (RAP), an appellant must designate in the notice of appeal the decision or part of decision that the party wants reviewed. RAP 5.3(a)(3). A party's appellate briefing must include a "separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error," as well as "argument in support of the issues presented for review, together with citations to

_____

Specific intelligence information and specific investigative records complied by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

[5] The trial court incorporated its oral ruling into its written orders.

legal authority and references to relevant parts of the record." RAP 10.3(a)(4), (6).

A party's failure to assign error to an issue, by itself, does not necessarily result in our refusal to consider that issue. State v. Olson, 126 Wn.2d 315, 320, 893 P.2d 629 (1995). Indeed, "RAP 1.2(a) makes clear that technical violation of the rules will not ordinarily bar appellate review, where justice is to be served by such review . . . where the nature of the challenge is perfectly clear, and the challenged finding is set forth in the appellate brief." Daughtry v. Jet Aeration Co., 91 Wn.2d 704, 710, 592 P.2d 631 (1979).

However, "a complete failure of the appellant to raise the issue in any way at all—neither in the assignments of error, in the argument portion of the brief, nor in the requested relief" may entirely preclude appellate court consideration of the issue. Olson, 126 Wn.2d at 320-21. Our Supreme Court has noted that this narrow rule

> makes perfect sense because in the situation where the issue is not
> raised at all, the court is unable to properly consider the issue prior
> to the hearing and is given no information on which to decide the
> issue following the hearing. More importantly, the other party is
> unable to present argument on the issue or otherwise respond and
> thereby potentially suffers great prejudice.

Olson, 126 Wn.2d at 321-22; see Ang v. Martin, 154 Wn.2d 477, 487, 114 P.3d 637 (2005) (appellant's "incidental allusion" to an issue not otherwise discussed or analyzed in the briefing was insufficient to warrant resolution).

Here, Lee did not appeal from the trial court's order granting summary judgment in favor of the Cobains and enjoining the City from disclosing the death-scene photographs. That order is the only order addressing the Cobains'

substantive due process rights under the Fourteenth Amendment. Lee did not assign error to the trial court's due process holding in his appellate brief. Neither did Lee mention the trial court's due process holding in his statements of issues pertaining to his assignments of error. Finally, Lee neither discussed the trial court's due process holding in the argument section of his opening brief, nor did he request relief from the trial court's ruling.

In his reply brief, Lee asserts that the omission of any mention of the trial court's due process holding was "purely accidental." However, in his reply to the Cobains' motion to dismiss, Lee argued that "the references to the due process clause of the 14th Amendment are a particularly weak aspect of the defendants' arguments." Lee also extoled the virtues of his "Associate of Technical Arts degree in the ABA-approved Paralegal Studies program" where he "graduated with a cumulative 4.0 GPA, the highest attainable grade point average," and noted that he has "many years in dealing with courts as a *pro se* litigant and defendant." In light of these assertions, it is questionable that Lee's failure to appeal from, assign error to, analyze, or request relief from the trial court's due process holding was "purely accidental."

In any event, because Lee entirely failed to appeal from or analyze the trial court's due process holding, the Cobains were unable to respond to his arguments on the issue. This prejudiced them as respondents. See Olson, 126 Wn.2d at 321. Moreover, because it was the Cobains who first brought the due process holding to our attention, Lee assumed the tactically advantageous

position of being able to respond to the Cobains' presentation on appeal without rebuttal.

Because Lee has failed to appeal from the trial court's order, assign error to the court's ruling, analyze or otherwise discuss the ruling, or request relief from the ruling, he forfeits his right to review of the issue and the trial court's order.[6]

B

Lee's failure to appeal from, assign error to, analyze, or otherwise request relief from the trial court's due process ruling provides the basis for affirmance of that trial court order. Nevertheless, because of the near quarter-century of tenacity that Lee has displayed in pursuing his theory that Mr. Cobain was murdered, we believe it will suit the parties' interests for us to expound upon the wisdom and propriety of the trial court's order.

We review a trial court's decision on summary judgment de novo. Estate of Haselwood v. Bremerton Ice Arena, Inc., 166 Wn.2d 489, 497, 210 P.3d 308 (2009). Summary judgment is appropriate only if the supporting materials, viewed in the light most favorable to the nonmoving party, demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). "Once the moving party has met this burden, however, the burden shifts to the nonmoving

---

[6] We reach the same conclusion with regard to Lee's assertion that the trial court erred by "failing to address in its written ruling/order five police photographs not a part of the crime scene set, to which Lee had stated a statutory claim of $135,000." Lee addresses this contention for the first time in his reply brief but does not assign error to any order or otherwise discuss or analyze his contention. Indeed, the only mention of this statutory claim of $135,000 comes from the statement of issues section of his consolidated reply brief. Lee forfeited review of this issue.

party to set forth specific facts showing that there is a genuine issue for trial." Sisters of Providence v. Snohomish County, 57 Wn. App. 848, 850, 790 P.2d 656 (1990). "The nonmoving party cannot simply rest upon the allegations of his pleadings; he must affirmatively present the factual evidence upon which he relies." Sisters of Providence, 57 Wn. App. at 850.

"Trial courts have broad discretionary power to fashion injunctive relief to fit the particular circumstances of the case before it." Hoover v. Warner, 189 Wn. App. 509, 528, 358 P.3d 1174 (2015). "'[O]ne who seeks relief by temporary or permanent injunction must show (1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him.'" Kucera v. Dep't of Transp., 140 Wn.2d 200, 209, 995 P.2d 63 (2000) (alteration in original) (internal quotation marks omitted) (quoting Tyler Pipe Indus., Inc. v. Dep't of Revenue, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982)).

In Marsh v. County of San Diego, the federal circuit court considered, as a matter of first impression, whether "the common law right to non-interference with a family's remembrance of a decedent is so ingrained in our traditions that it is constitutionally protected." 680 F.3d 1148, 1154 (9th Cir. 2012). The court recognized that such a right was protected under the Fourteenth Amendment.

> The long-standing tradition of respecting family members' privacy in death images partakes of both types of privacy interests protected by the Fourteenth Amendment. First, the publication of death images interferes with "the individual interest in avoiding disclosure of personal matters. . . ." Whalen v. Roe, 429 U.S. [589, 599,] 97 S. Ct. 869[, 51 L. Ed. 2d 64 (1977)]. Few things are more personal

than the graphic details of a close family member's tragic death. Images of the body usually reveal a great deal about the manner of death and the decedent's suffering during his final moments—all matters of private grief not generally shared with the world at large.

Second, a parent's right to control a deceased child's remains and death images flows from the well-established substantive due process right to family integrity. See Rosenbaum v. Washoe County, 663 F.3d 1071, 1079 (9th Cir. 2011) ("The substantive due process right to family integrity or to familial association is well established."). The interest of parents "in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests. . . ." Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). A parent's right to choose how to care for a child in life reasonably extends to decisions dealing with death, such as whether to have an autopsy, how to dispose of the remains, whether to have a memorial service and whether to publish an obituary. Therefore, we find that the Constitution protects a parent's right to control the physical remains, memory and images of a deceased child against unwarranted public exploitation by the government.

Marsh, 680 F.3d at 1154.

The court then turned to substantive due process. At issue was whether Marsh's substantive due process rights were violated when San Diego Deputy District Attorney Jay Coulter released to the press death-scene photographs of Marsh's son. Marsh, 680 F.3d at 1152. The court concluded that this disclosure violated Marsh's substantive due process rights.

To violate substantive due process, the alleged conduct must "shock[ ] the conscience" and "offend the community's sense of fair play and decency." Rochin v. California, 342 U.S. 165, 172–73, 72 S. Ct. 205, 96 L. Ed. 183 (1952). Given that burial rites "have been respected in almost all civilizations from time immemorial" and "are a sign of the respect a society shows for the deceased and for the surviving family members," the Favish Court reasoned that unwarranted public exploitation of death images degrades the respect accorded to families in their time of grief. [Nat'l Archives & Records Admin. v. ]Favish, 541 U.S. [157,] 167–68, [124 S. Ct. 1570 [,158 L. Ed. 2d 319 (2004)]. Mutilation of a deceased family member's body, desecration of the burial site and public display of death images are the kind of conduct that is likely

to cause the family profound grief and therefore "shocks the conscience" and "offend[s] the community's sense of fair play and decency." Rochin, 342 U.S. at 172–73.

Marsh claims that when she learned that Coulter sent her son's autopsy photograph to the press, she was "horrified; and suffered severe emotional distress, fearing the day that she would go on the Internet and find her son's hideous autopsy photos displayed there." Marsh's fear is not unreasonable given the viral nature of the Internet, where she might easily stumble upon photographs of her dead son on news websites, blogs or social media websites. This intrusion into the grief of a mother over her dead son—without any legitimate governmental purpose—"shocks the conscience" and therefore violates Marsh's substantive due process right.

Marsh, 680 F.3d at 1154-55 (footnote omitted) (some alterations in original).

Here, the Cobains contend that the release of the death-scene photographs of Mr. Cobain would violate their substantive due process rights pursuant to the analysis set forth in Marsh. The Cobains assert that they would personally suffer if the death-scene photographs were released to the public.

Courtney Love Cobain stated in her declaration:

I understand that the Plaintiff seeks the public release of death-scene photos of Kurt that show his entire lifeless body, as well as the damage done by the shotgun blast to his head. I have never seen these graphic and disturbing images, nor do I ever want to. . . . Certainly, public disclosure would reopen all my old wounds, and cause me and my family permanent—indeed, endless and needless—pain and suffering, and would be a gross violation of our privacy interests.

. . . Inevitably, these images will wind up on the Internet, where they would be permanently circulated. By virtue of the fact that Kurt is my late husband, they will also likely end up in search results about myself. I would unavoidably come across them, and I would never be able to erase those haunting images from my mind. I cannot even imagine the enormity of the trauma and mental scarring this would cause me, not to mention many others.

Frances Bean Cobain stated in her declaration:

I once saw mock photos depicting my father's body. That experience irreparably scarred me. I cried for days afterward. Those horrible images still haunt me. I cannot imagine how terrible it would be knowing that the photographs that Mr. Lee seeks were public, and that I or any of my loved ones, including my father's mother and sisters, might inadvertently see them. Release and publication of the photographs would shock me and exacerbate the posttraumatic stress that I have suffered since childhood.

At issue here are photographs that show the dead body of Mr. Cobain. But the photographs are more than an oddity showcasing the tragic end of a celebrated musician—to those who knew Mr. Cobain, the photographs show the lifeless body of a son, a father, a husband, or a friend. As the Cobains' declarations establish, the disclosure of these photographs would allow the entire world to peer into one of the most private and distressing events of the Cobains' lives. Once released, the photographs would become ammunition for those who wish to taunt and antagonize the Cobains and their friends.

Pursuant to the analysis set forth in Marsh, the trial court correctly concluded that the release of the death-scene photographs would shock the conscious and offend the community's sense of fair play and decency, violating the Cobains' substantive due process rights under the Fourteenth Amendment. Permanently enjoining the City from disclosing those photographs is a reasonable way to prevent such a violation. There was no error in the trial court's ruling.

III

Lee contends that the trial court erred by granting summary judgment in favor of the City. This is so, he asserts, because none of the documents that he requested are exempt from disclosure under the PRA.

We review de novo agency determinations challenged under the PRA. RCW 42.56.550(3); Resident Action Council v. Seattle Hous. Auth., 177 Wn.2d 417, 428, 327 P.3d 600 (2013). The agency carries the burden of establishing that an exemption applies under the PRA. RCW 42.56.550(1); Resident Action Council, 177 Wn.2d at 428. "A public records case may be decided based on affidavits alone." Forbes v. City of Gold Bar, 171 Wn. App. 857, 867, 288 P.3d 384 (2012). "Purely speculative claims about the existence and discoverability of other documents will not overcome an agency affidavit, which is accorded a presumption of good faith." Forbes, 171 Wn. App. at 867 (citing Trentadue v. Federal Bureau of Investigation, 572 F.3d 794, 808 (10th Cir. 2009)).

The PRA requires disclosure of "all public records" unless an exemption applies. RCW 42.56.070(1). A "public record" is "any writing containing information relating to the conduct of government or the performance of any governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form of characteristics." RCW 42.56.010(3). "The PRA's mandate for broad disclosure is not absolute. The PRA contains numerous exemptions that protect certain information or records from disclosure, and the PRA also incorporates any 'other statute' that prohibits disclosure of information or records." Resident Action Council, 177 Wn.2d at 432 (citing RCW 42.56.070, .230-.480, .600-.610). "The PRA's exemptions are provided solely to protect relevant privacy rights or vital governmental interests that sometimes outweigh the PRA's broad policy in favor of disclosing public records." Resident Action Council, 177 Wn.2d at 432. Importantly, "the basic

purpose and policy of [the PRA] is to allow public scrutiny of government, rather than to promote scrutiny of particular individuals who are unrelated to any governmental operation." In re Rosier, 105 Wn.2d 606, 611, 717 P.2d 1353 (1986).

## A

Lee first contends that the trial court erred by ruling that the death-scene photographs are exempt from disclosure under the PRA. We disagree.

The PRA requires the disclosure of public records "unless the record falls within the specific exemptions of . . . [an]other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). The Fourteenth Amendment's privacy protections are necessarily a part of the PRA's "other statute" exemption. White v. Clark County, 188 Wn. App. 622, 631-32, 354 P.3d 38 (2015) (holding that the PRA's "other statute" exemption is derived from a combination of the privacy protections afforded by the Washington Constitution and various other statutes and regulations and noting that "[i]f the identity of a voter could be determined by a review of certain ballots, article VI, section 6 would preclude production of those ballots"); see also Yakima v. Yakima Herald-Republic, 170 Wn.2d 775, 808, 246 P.3d 768 (2011) ("'other laws' includes the United States Constitution"); see also Freedom Found. v. Gregoire, 178 Wn.2d 686, 695, 310 P.3d 1252 (2013) ("the PRA must give way to constitutional mandates").

As discussed, disclosure of the death-scene photographs would violate the Cobains' substantive due process rights under the Fourteenth Amendment.

Marsh, 680 F.3d at 1154-55.  Accordingly, the death-scene photographs are exempt from disclosure pursuant to the PRA's "other statute" provision.  RCW 42.56.070(1).  There was no error.

B

Lee next contends that the trial court erred by granting summary judgment in favor of the City with regard to the other exempt or redacted documents that were withheld by the City.  These documents include Mr. Cobain's autopsy report in its entirety, two pages of a nine page drug influence evaluation, redaction of certain documents that show witness identifying information, redaction of certain documents that contain Social Security numbers and credit card information, redaction of certain documents that contain nonconviction data and jail records, and redaction of certain documents relating to juvenile records and telephone numbers.  Each is addressed in turn.

*Autopsy Report*

The trial court ruled that Mr. Cobain's autopsy report was exempt from disclosure pursuant to RCW 68.50.105(1).  That statute provides:

> Reports and records of autopsies or postmortems shall be confidential, except that the following persons may examine and obtain copies of any such report or record: The personal representative of the decedent as defined in RCW 11.02.005, any family member, the attending physician or advanced registered nurse practitioner, the prosecuting attorney or law enforcement agencies having jurisdiction, public health officials, the department of labor and industries in cases in which it has an interest under RCW 68.50.103, or the secretary of the department of social and health services or his or her designee in cases being reviewed under RCW 74.13.640.

RCW 68.50.105(1). This statute is an "other statute" incorporated into the PRA. RCW 42.56.070(1). Accordingly, autopsy reports are categorically exempt from disclosure. See Comaroto v. Pierce County Med. Exam'r's Office, 111 Wn. App. 69, 74, 43 P.3d 539 (2002) (holding that a suicide note was a postmortem report pursuant to RCW 68.50.105(1) and therefore exempt from disclosure).

Lee recognizes that the autopsy report in question "would seem to be the definitive example of an exemption which is clearly established under another statute," but nevertheless refuses to concede that the exemption is appropriate under the circumstances of this case. Lee asserts variously that "the entire statute could be the subject of a constitutional challenge," "many questions could be raised about the suppression of these documents in full," "such records . . . are routinely displayed as evidence in court proceedings," and that "the City has claimed exemption without any description of the contents of the report."

An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). We will generally not consider claims unsupported by citation to authority, references to the record, or meaningful analysis. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Pro se litigants are held to the same standards as attorneys and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

Autopsy reports are categorically exempt from disclosure under the PRA. Although Lee contends that the circumstances here warrant disclosure, he fails

to cite to relevant authority or otherwise provide meaningful analysis in support of his assertions. There was no error.

*Drug Influence Evaluation*

The trial court ruled that the drug influence evaluation was exempt from disclosure pursuant to RCW 70.02.020, former RCW 70.96A.150,[7] and RCW 42.56.240(1). Mary Perry, the director of transparency and privacy for the City, submitted a declaration stating that the redacted portions of the drug influence evaluation in question were "not prepared by SPD, do not mention SPD, and refer and relate[] solely to Ms. Courtney Love-Cobain, Mr. Cobain's widow. More specifically, these two pages discuss medical treatment issues, including issues regarding possible drug use and treatment."

Pursuant to RCW 70.02.020, "a health care provider, an individual who assists a health care provider in the delivery of health care, or an agent and employee of a health care provider may not disclose health care information about a patient to any other person without the patient's written authorization." "Health care information" is "any information . . . that identifies or can readily be associated with the identity of a patient and directly relates to the patient's health care." RCW 70.02.010(16). RCW 70.02.020 is an "other statute" incorporated into the PRA. RCW 42.56.070(1). Accordingly, health care information is exempt from disclosure under the PRA.

_____

[7] RCW 70.96A.150 was repealed effective April 1, 2016, nearly a year after the City invoked the exemption.

Lee contends that the requested information is not exempt from disclosure because the City is not a "health care provider." While this may be so, RCW 70.02.020 is incorporated into the PRA through RCW 42.56.360(2), which provides that "Chapter 70.02 RCW applies to public inspection and copying of health care information of patients." Prison Legal News, Inc. v. Dep't of Corr., 154 Wn.2d 628, 644, 115 P.3d 316 (2005) (discussing former RCW 42.17.312, which is identical to RCW 42.56.360(2)). Accordingly, "RCW 70.02.020 prohibits disclosure of 'health care information' without the patient's written authorization." Prison Legal News, 154 Wn.2d at 644.

The redaction of the drug influence evaluation was also justified by former RCW 70.96A.150. Former RCW 70.96A.150 provided that "registration and other records of treatment programs shall remain confidential." There was no error.

### Witness Identifying Information

The trial court ruled that the redaction of certain witness identifying information was authorized by RCW 42.56.240(2). That statute provides, in pertinent part, that the following investigative information is exempt from public inspection:

> Information revealing the identity of persons who are witnesses to or victims of crime or who file complaints with investigative, law enforcement, or penology agencies, other than the commission, if disclosure would endanger any person's life, physical safety, or property. *If at the time a complaint is filed the complainant, victim, or witness indicates a desire for disclosure or nondisclosure, such desire shall govern.*

RCW 42.56.240(2) (emphasis added).

Here, certain witnesses requested that their identity not be disclosed at the time that they provided information to police during the 1995 investigation of Mr. Cobain's death. Mary Perry's declaration states that the names redacted by the City are the names of the people who requested that their identity not be disclosed in 1995.

Lee is correct that, other than the City's declaration, there is nothing in the record establishing that the names redacted by the City in response to Lee's request are the same names that were redacted by request in 1995. But speculation does not overcome the presumption of good faith afforded to an agency affidavit. Forbes, 171 Wn. App. at 867. The City provided contemporaneous documentation showing that certain witnesses requested that their identity not be disclosed at the time that they provided information to the City. Accordingly, those names are exempt from disclosure. There was no error.

*Other Redactions*

The trial court ruled that redaction of Social Security and credit card numbers was authorized by RCW 42.56.230(5). The trial court ruled that the redaction of nonconviction data and jail records was authorized by RCW 10.97.080 and RCW 70.48.100(2). Finally, the trial court ruled that redactions of Mr. Cobain's juvenile records and the telephone number of an SPD officer were authorized by chapter 13.50 RCW, RCW 42.56.240(1), and RCW 42.56.250(4).

RCW 42.56.230 (5) exempts from disclosure "[c]redit card numbers, debit card numbers, electronic check numbers, card expiration dates, or bank or other financial information . . . including social security numbers." RCW 10.97.080

prohibits the disclosure of "any nonconviction data except for the person who is the subject of the record." RCW 70.48.100(2) requires that "the records of a person confined in jail shall be held in confidence." RCW 13.50.050(3) provides that "[a]ll records other than the official juvenile court file are confidential." Finally, RCW 42.56.250(3) exempts from disclosure "residential telephone numbers, personal wireless telephone numbers . . . of employees or volunteers of a public agency."

Lee recognizes that all of this information is categorically exempt from disclosure. Lee's response is that, because Mr. Cobain is dead, he is not a "person" and that there is nothing preventing the City from disclosing the personal information of dead people.

An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). Lee provides no authority for his assertion that the categorical exemptions here apply only to living persons. There was no error.

Affirmed.

We concur: