IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| F. ROBERT STRAHM,<br><br>    Appellant,<br><br>  v.<br><br>SNOHOMISH COUNTY,<br><br>    Respondent. | No. 79711-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: March 23, 2020 |

SMITH, J. — F. Robert Strahm appeals the dismissal of his lawsuit alleging that Snohomish County (County) violated the Public Records Act (PRA), chapter 42.56 RCW, in relation to two public records requests. We conclude that the record was not sufficiently developed for the trial court to determine (1) whether the County conducted an adequate search with regard to either of the two requests or (2) whether the County silently withheld records with regard to the request assigned tracking number K024672. Accordingly, we vacate the trial court's dismissal of Strahm's case and its conclusions that the County complied with the PRA, conducted an adequate search for records and, with regard to request K024672, did not silently withhold records. We remand to the trial court for further proceedings consistent with this opinion, including determining (1) whether the County performed an adequate search with regard to both of Strahm's requests, (2) whether the County silently withheld records responsive to request K024672, (3) whether the County complied with the PRA, and (4) if appropriate, the amount of any costs and monetary penalties.

BACKGROUND

Facts

In 2017 and 2018, Strahm submitted more than 40 total public records requests to Snohomish County. This appeal concerns two of those requests, described below.

*Request K019782*

On November 6, 2017, Strahm made the following request:

I request the following public record(s), including without limitation electronic records:

1. Records of the attached fund 300, subfund 004, transactions contained within the red rectangles, including without limitation, financial institution statements, bank statements, cancelled checks, wire transfers, interfund transfers, etc.

According to Strahm's later declaration, "[t]he request was for records regarding six large transactions within the new courthouse project fund between February 29, 2016, and May 2, 2016." Strahm requested that responsive records be provided "on CD [(compact disc)] for pickup."

Tracie O'Neill, a Risk Management Specialist for Snohomish County, responded to Strahm's request on November 9, 2017. O'Neill informed Strahm that his request had been assigned tracking number K019782. She also informed him that "[w]e reasonably believe that public records (if any) responsive to this request will be available beginning on or before January 15, 2018."

On January 12, 2018, the County made a first installment of responsive records available to Strahm. According to O'Neill's later declaration, the first installment consisted of 95 pages and included "the financial records

2

documenting the transactions referenced in request K019782 . . . from the County Treasurer's Office." In a cover letter that accompanied the first installment, O'Neill informed Strahm that "[w]e anticipate we will have another installment or update on or before March 15, 2018."

On February 13, 2018, O'Neill wrote Strahm regarding two of Strahm's other pending records requests, designated K019549 and K019774. In her letter, O'Neill indicated that "the County ha[d] potentially thousands of . . . records in the form of *daily banking statements*" responsive to those two requests. She explained that the cost to produce the daily banking statements would be "in excess of $1,000.00" and that "a $100.00 deposit is required before we will begin processing this request."

O'Neill indicated that "[t]he County also has access to *monthly banking statements*," which were "a condensed version from the daily statements" and would also be responsive to requests K019549 and K019774. She explained that Bank of America would charge the County an estimated $46,000 to prepare the monthly statements and, thus, the County would require a $4,600 deposit. O'Neill requested further direction from Strahm as to "which type of statement you are requesting," explaining that "[s]ince we are unable to move forward without a deposit, if we do not hear from you in the next 30 days, then these requests will be closed and no further action will be taken." Finally, O'Neill indicated that the banking records referenced in her letter would "likely be responsive to several of your other pending requests," including request K019782. She wrote that "[w]e will assume you do not want these bank

3

statement records reproduced under all of your other pending requests K019549 and K019774, then [sic] we will assume you do not want them produced in any of your other pending public requests."

Strahm responded to O'Neill's letter two days later and asked to inspect the bank statements. O'Neill responded on February 15, 2018, to schedule an appointment for Strahm to "review examples of both the daily and monthly bank statements in order for you to determine which option you would prefer to receive." In response, Strahm requested that "both paper and electronic versions of the complete statements" be made available for inspection. O'Neill then responded that because requests K019549 and K019774 "are large and require redactions on every document," inspection would not be possible without creating copies of the records. O'Neill wrote that "[a]bsent you providing a [10 percent] deposit, we will not be able to move forward with your records request." Strahm then responded, "I am modifying the subject requests to not include bank statements – under protest. Please promptly make the remaining records available for inspection and copying."

About a month later, on March 15, 2018, O'Neill e-mailed Strahm again regarding multiple pending requests, including the two referenced above (K019549 and K019774) and K019782. She stated that "[a]s the County previously advised in our February 13, 2018 . . . correspondence, the bank records that are responsive to K019549 and K019774 are also responsive to K018512, K019782 and K018477." She advised that the County had produced all responsive requests for the latter three requests "[w]ith the exception of bank

4

records." Referring to Strahm's earlier e-mail that he was modifying his requests to not include bank statements, O'Neill asked Strahm, "Based on your statement . . . that you did not want to receive [bank] records for K019549 and K019774, is it also true you do not wish to receive the bank statements for K019549, K019774, [sic] and K018477?" She asked Strahm to respond by March 26, 2018, and indicated that "[i]f we do not receive a response, we will consider your request abandoned and will administratively close your request."

Strahm responded the same day and requested, "Please make the records available for inspection." O'Neill responded a week later and wrote, with regard to K019782:

> We have estimated 3,360 pages of daily bank records responsive to K019782. The cost associated with these records is $336.00 and would require a $33.00 deposit. Should you wish to receive the monthly bank statements for this request, we have identified more than 2,400 pages at $10.00 per page for a total of $24,000.00 in costs. The required deposit would be $2,400.00.

O'Neill asked Strahm to "advise if you would like to receive the daily and/or monthly banking statements and forward the corresponding deposit." She indicated that the County would begin processing Strahm's request once the deposit was received and that "[i]f we do not receive a response by Friday, March 30, we will administratively close these requests."

It does not appear that Strahm responded to O'Neill's March 22, 2018, e-mail. Nevertheless, on March 26, 2018, O'Neill e-mailed Strahm again regarding request K019782, stating, "After an extensive search, we believe we have produced all responsive records for this request. However, this request will remain open for an additional thirty days – until April 26, 2018, in the event you

have questions or wish to discuss this request and responsive records further."

On March 30, 2018, O'Neill e-mailed Strahm again, indicating (despite her earlier e-mails stating that a deposit was required and that the County had produced all responsive records for request K019782) that the County had begun preparing daily bank statements for inspection in response to multiple requests, including K019782:

> After continued review of your public records requests, K022549, K019549, K019774, K019782, K018477, K018512, K017685, and K018089, and in order to provide you with the fullest assistance possible, the County has begun to prepare the responsive daily bank statements for your inspection. This is based on your request to review/inspect those records.
>
> A first installment of the bank statements will be available within thirty days. We will be in contact with you to arrange a mutually acceptable date and time. If you no longer want to inspect or receive the daily statements, then please let us know immediately.

In her later declaration, O'Neill characterized this March 30, 2018, e-mail as a correction of her earlier erroneous assertion that Strahm would be required to pay a fee to inspect the bank statements.[1]

According to O'Neill's declaration, Strahm inspected a first installment of daily bank statements on May 4, 2018, and a second installment (along with a second inspection of the first installment) on May 31, 2018. Also according to O'Neill's declaration, "[a]t the inspection on May 31, 2018, Mr. Strahm informed me he no longer wished to receive 'non-electronic paper records.'" O'Neill confirmed this by e-mail to Strahm on June 6, 2018:

---

[1] See RCW 42.56.120(1) ("No fee shall be charged for the inspection of public records or locating public documents and making them available for copying, except as provided in RCW 42.56.240(14) and subsection (3) of this section.").

6

> This email serves as follow up to your records inspection on Thursday, May 31[,] 2018.
>
> *At your May 31st inspection, you amended your requests and advised you no longer wished to receive[ ] non-electronic bank records.* As a result, your requests assigned tracking numbers K022549, K018512, and K017685 will be administratively closed as we have determined we have nothing further responsive to these requests.
>
> As we previously advised, our electronic bank records are available beginning in May of 2016 and will be responsive in part to your requests assigned tracking numbers K019782, K018477, K018089 and K019549. We understand that you do wish to receive these records and you are aware they will be provided in PDF format. We further understand you no longer want to conduct inspections for your installments of these records but would prefer to receive them on CD. If this is incorrect, please advise and we will arrange an inspection.

(Emphasis added and omitted.)

Strahm responded by e-mail on July 5, 2018. In his July 5th e-mail, Strahm addressed O'Neill's assertion that he no longer wished to receive non-electronic bank records:

> Re: Requests with county tracking numbers K022549, K018512, K017685.
>
> In regards to: "advised you no longer wished to receive[ ] non-electronic bank records"
>
> I was referring to the specific paper records that were being produced, which were daily records of all county banking. The records contained transactions that were not responsive to the requests.

Strahm further requested that the County "conduct an adequate search for existing electronic bank records," "search the Department of Information Technology [DoIT] for responsive electronic bank statement records," and "make all **responsive** bank records available for inspection and copying." Strahm's July

7

5th e-mail did not specifically address request K019782. O'Neill thus understood, according to her later declaration, that Strahm still did not want paper bank records in response to that request.

On July 9, 2018, Jennifer Sperline, Snohomish County's Public Records Officer, wrote to Strahm regarding his July 5th e-mail to O'Neill. Sperline attempted to clarify what Strahm meant by "'electronic banking records,'" explaining that the County interpreted that to refer to "records held by the County in electronic format that are produced by Bank of America, and which document financial transactions to or from the County account in the form of Bank Statements." Sperline noted that "[r]ecognizing that . . . you likely have very specific financial information you would like to have produced, any explanation you can provide to help us understand the information you are seeking would be needed to continue our search." Sperline also explained that although Strahm was correct that the bank records contained transactions that were not responsive to his requests, this was because the records as provided by Bank of America did not allow for the exclusion of transactions associated with funds *not* selected in Strahm's requests. Strahm responded and requested that the County produce "each page that contains a record of the responsive transactions would be adequate. For example, on a particular day a responsive transaction occurred there would be at least one bank statement page containing a record of the transaction. Producing only these pages with corresponding transactions would be adequate."

Meanwhile, on June 29, 2018, O'Neill had e-mailed Strahm to indicate that

an additional installment of responsive records, consisting of 85 electronic files and 437 scanned pages, was available for his review or purchase for multiple requests, including K019782. Strahm responded on July 9, 2018, again referring to the DoIT:

> The county [DoIT] provides the county: "digital scanning and electronic storage of over 6 million pages annually in order to preserve and protect documents, improve access and retrieval, and reduce paper storage volumes." The electronic storage of records includes asset, financial and accounting records.
>
> The county needs to complete an adequate search for the requested records – I will be paying for the records under protest.

On July 18, 2018, Sperline e-mailed Strahm to inform him that the County would conduct DoIT searches for records responsive to his outstanding requests, including K019782. She also told Strahm that she would "look further into your suggestion that we only produce pages of records that have the particular transaction you are looking for."

The next day, Sperline e-mailed Strahm again and proposed a global resolution to Strahm's several outstanding requests:

> Given our recent conversations regarding multiple public records requests, I was prompted to take a look at all your public records requests. . . . What I noted were areas of miscommunication between you and several public records specialists in the County. I surely do not want obtaining public records from Snohomish County to be frustrating for you. To ensure we are capturing what you want and providing you the fullest assistance, I propose closing the[se] . . . requests and having you work with myself . . . in determining what exactly you are seeking and how we can most effectively get you those responsive records in the format that you wish.
>
> If this is something you are interested in pursuing, then please let me know. Otherwise, we will continue to process your public records requests as we have been.

9

According to Sperline's later declaration, Strahm responded to her e-mail by submitting another public records request.

On September 14, 2018, O'Neill e-mailed Strahm and informed him regarding request K019782 that "[a]fter an extensive search, we believe we have produced all responsive records and we will be administratively closing this request." O'Neill indicated that Sperline would contact Strahm regarding the pending DoIT searches and that "[a]ssuming that nothing further is found, this request will remain closed."

Strahm responded to O'Neill's e-mail, stating, "Please make responsive bank statements available for inspection." Strahm and O'Neill then engaged in back-and-forth e-mails in which O'Neill asked Strahm whether he was "requesting to inspect records you already possess"; Strahm asked O'Neill to "identify the responsive bank records, e.g. date and page the transactions were completed"; O'Neill explained that "[w]e will not be highlighting or marking the exact transactions that you are interested in"; and Strahm asserted that "[t]he bank records produced by the County do not contain the subject transactions." Strahm then requested "an inspection of [DoIT] paper records and computer systems for responsive records." When Sperline also requested clarification, Strahm requested "an inspection of Snohomish County paper records responsive to request K019782, and an inspection of County computer systems for records responsive to request K019782." Sperline responded that K019782 had been closed "because all responsive records have been provided to you." Sperline stated that Strahm had requested that only electronic records be produced and

asked whether Strahm was now reamending his request "to include paper records held within the Finance Department." Strahm responded and asserted that "[t]he County has not provided all nonresponsive records." He requested that the County "make responsive paper bank records available for inspection." When Sperline again asserted that "[y]ou previously limited your public records requests . . . to electronic bank statements only" and asked again whether Strahm was changing his request to include responsive paper bank statements, Strahm responded, "I stated that I no longer wished to receive non-responsive paper bank records because the paper bank records produced for inspection appeared to be completely non-responsive." On October 1, 2018, Sperline (1) responded that the County believed that the paper bank statements produced *were* responsive to request K019782, (2) relayed her continued understanding that Strahm did not wish to receive paper bank statements, and (3) informed Strahm that request K019782 would remain closed.

Meanwhile, in a separate e-mail chain, Sperline informed Strahm that the DoIT had nothing responsive for request K019782. Strahm responded, "Please promptly make responsive paper and electronic records available for inspection." Sperline responded the next day, explaining that the County interpreted his request as seeking information about certain transactions marked by red rectangles in his original, November 2017 request and that "[t]hose marked transactions stemmed out of the Treasurer's Office." Thus, she explained, "[t]hat is where the responsive records were located." Sperline also wrote that "there are paper bank statements responsive to this request but you previously

11

instructed us not to produce paper bank statements." When Strahm responded on October 10, 2018, and again asked that the paper bank statements responsive to request K019782 be made available for inspection, the County opened a new public records request. That request was assigned tracking number K027222 and is referred to herein as the "K019782 Follow-up Request."

*Request K024672*

Strahm made the second request at issue in this appeal on June 14, 2018:

I request the following public record(s):

1.  Payments made such as warrants, checks, wire transfer[s], electronic payments, etc. for the $15,686,852 federal funding amount enclosed in the red rectangle on the attached 2014 county Comprehensive Annual Financial Report page.

According to Strahm's later declaration, the request related to "County expenditures of federal disaster funds related to the 2014 Oso area landslide." Strahm requested that "all nonexempt records be disclosed and made available for inspection and copying."

Kathryn Fugere, a Records Specialist Senior for Snohomish County, responded to Strahm's request on June 21, 2018. In her e-mail, Fugere informed Strahm that his request had been assigned tracking number K024672. She also informed him that "[w]e reasonably believe that public records responsive to this request will be available beginning on or before August 1, 2018."

On August 1, 2018, Fugere e-mailed Strahm to inform him that records responsive to request K024672 were available for his "review and/or purchase" and that "[t]he cost is $[0].35." According to Strahm's later declaration, the

12

records were produced on a CD and "contained County year 2014 payment/transaction records evidencing disaster related payments made, and a spreadsheet containing disaster expenditure information, but did not contain any requested County 'warrants, checks, wire transfer[s], electronic payments, etc.'" In a letter that accompanied the responsive records, Fugere wrote, "You will note that the total reimbursed does not equal the . . . $15,686,852 federal funding amount you highlighted from the 2014 County Comprehensive Annual Financial Report." She explained this was because "the funds are still being reimbursed." She also wrote, "We believe that this completes our response to your request" and asked Strahm to "let us know if you were expecting records showing additional level of detail for the reimbursements." She informed Strahm that "[i]f we do not hear from you within 30 days of your receipt of the installment, we will assume that you are satisfied with our response and will close the request."

More than two months later, on October 9, 2018, Strahm responded to Fugere's August 1st e-mail, writing, "Please promptly make all records responsive to this request available for inspection." Fugere responded, "Do you need another copy of the installment which my records show you picked up on 8/2/2018?" After a few more back-and-forth e-mails in which Fugere again asked for clarification and Strahm again asked that all responsive records be made available for inspection, Fugere wrote, "The County's search for and production of records in this response—K024672—is complete. We informed you on August 2, 2018 (the date you picked up the installment), that this request would be closed if you did not provide additional clarification within 30 days . . . . This

13

request remains closed." Strahm responded twice to Fugere's e-mail, first requesting that the County "promptly produce all records responsive to the request," and then demanding that the County "produce all records responsive to the request, for inspection, by 10/18/18." Fugere again responded that the County's response was complete and that the request remained closed.

Procedural History

Strahm filed a "Motion for Order to Show Cause and Motion to Show Cause re: Violations of the Public Records Act" on November 9, 2018, followed by a complaint on December 4, 2018, and then a second show cause motion on January 7, 2019.[2] Strahm's motions were supported by four declarations from himself and one from Virginia Hedge, who inspected some of the records produced by the County in response to Strahm's requests. In his second motion, Strahm alleged that the County violated the PRA by failing to disclose and produce responsive records, failing to perform an adequate search for responsive records, silently withholding responsive records, denying his requests without providing reasoning, failing to specify exemptions, and failing to provide fullest assistance. In support of his allegations, Strahm declared that in response to the K019782 Follow-up Request, the County produced a bank statement, dated February 29, 2016, that was responsive to his original request K019782. Strahm also declared that in December 2018, the County produced 13 pages of warrants in response to another of his requests. Strahm asserted that those warrants were responsive to, and thus should have been produced in connection

---

[2] The record does not reflect why Strahm filed a second motion.

with, request K024672.

On January 7, 2019, the superior court entered an order to show cause.[3] The County responded on January 14, 2019, relying on declarations from O'Neill, Fugere, Sperline, and Kirke Sievers, the Snohomish County Treasurer. In his declaration, Sievers explained, with regard to request K019782, that Snohomish County maintains two investment portfolios: (1) the "LPAR" portfolio, which "reflects investments in the Washington State Local Government Investment Pool (LGIP)" and (2) the "SPAR" portfolio, "also known as the Snohomish County Investment Pool." Sievers explained that both the LPAR portfolio and the SPAR portfolio are pooled portfolios in that they consist of multiple funds, including subfund 300-04, which was the fund with regard to which Strahm had requested transaction information in request K019782. Sievers explained that in its bank account with Bank of America, "the County has the County's cash for its funds and subfunds, as well as the funds of fire districts, schools, and any other governmental agency that wants to have the County invest their money." Sievers explained that transactions occurring in the account are "usually netted, meaning they are grouped together and they are not always individually identified on the daily banking statement." Thus, Sievers explained, Strahm was incorrect in asserting that there should be six bank statements corresponding to the six subfund 300-04 transactions that Strahm specified in request K019782. Instead, "[t]here is no one-to-one relationship," and "[t]here is no single document that

---

[3] The superior court entered an earlier show cause order on November 30, 2018, presumably in response to Strahm's November 9, 2018, motion. The record does not reflect the outcome of the first show cause hearing.

reflects [each] transaction."

The trial court held a show cause hearing on January 18, 2019. No transcript was provided for the hearing, but according to a minute entry, the court "denie[d] penalties to the County [and found that the] County made more than a good faith effort to comply, regardless of whether Mr. Strahm is satisfied. Confusion is evident." The court later entered an order dismissing Strahm's case with prejudice. In its order, the court concluded that the County complied with the PRA, conducted an adequate search for records, imposed appropriate fees, produced records responsive to both requests, did not silently withhold records, and "acted in good faith to an exceptional degree in responding to [Strahm]'s requests." Strahm appeals.

## DISCUSSION

Strahm argues that the trial court erred in concluding that the County complied with the PRA and, thus, it erred by dismissing his case. As further discussed below, we agree in part and remand to the trial court for further fact-finding as to (1) whether the County performed an adequate search with regard to both requests and (2) whether the County silently withheld responsive records with regard to request K024672. We otherwise reject Strahm's arguments.[4]

### Background PRA Concepts

"The PRA is a strongly worded mandate for broad disclosure of public

---

[4] To the extent that Strahm raises arguments that are not specifically discussed below, those arguments are not adequately briefed to warrant consideration. See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (appellate court "will not consider an inadequately briefed argument").

records." Neigh. All. of Spokane County v. Spokane County, 172 Wn.2d 702, 714, 261 P.3d 119 (2011). "Passed by popular initiative, it stands for the proposition that 'full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society.'" Neigh. All., 172 Wn.2d at 714-15 (quoting Progressive Animal Welfare Soc'y v. Univ. of Wash. (PAWS), 125 Wn.2d 243, 251, 884 P.2d 592 (1994)).

"The PRA requires state and local agencies to 'make available for public inspection and copying all public records, unless the record falls within the specific exemptions of [the PRA] or other statute.'" Resident Action Council v. Seattle Hous. Auth., 177 Wn.2d 417, 431, 327 P.3d 600 (2013) (alteration in original) (quoting RCW 42.56.070(1)). "A 'public record' is defined broadly to include 'any writing containing information relating to the conduct of government or [a governmental function]' that is 'prepared, owned, used, or retained' by any state or local agency." Resident Action Council, 177 Wn.2d at 431 (alteration in original) (quoting RCW 42.56.010(3)).

Because the PRA applies only to public records, "disclosure is not necessary unless and until there has been a specific request for records." Smith v. Okanogan County, 100 Wn. App. 7, 12, 994 P.2d 857 (2000). When a request is received, the agency must respond within five business days either by (1) "[p]roviding the record[s]," (2) providing a link to the records requested (unless the requester notifies the agency that he or she cannot access records through the internet), (3) acknowledging receipt of the request "and providing a

reasonable estimate of the time the agency . . . will require to respond,"
(4) acknowledging receipt of the request, asking for clarification if the request is unclear, "and providing, to the greatest extent possible, a reasonable estimate of the time the agency . . . will require to respond to the request if it is not clarified," or (5) "[d]enying the . . . request." RCW 42.56.520(1).

The PRA expressly contemplates two types of requester-initiated causes of action for alleged PRA violations. RCW 42.56.550(1), (2). The first is an action under RCW 42.56.550(1) based on an agency's denial of "an opportunity to inspect or copy a public record." "[S]uch a claim may be based on a variety of agency actions or inactions," including an agency's claim of exemption, failure to respond or produce records, "silent withholding," and failure to conduct an adequate search. WASH. STATE BAR ASS'N, PUBLIC RECORDS ACT DESKBOOK: WASHINGTON'S PUBLIC DISCLOSURE AND OPEN PUBLIC MEETING LAWS § 16.2 (2d ed. 2014). A claim for denial of an opportunity to inspect or copy under RCW 42.56.550(1) does not accrue until there is "some agency action, or inaction, indicating that the agency will not be providing responsive records." Hobbs v. State, 183 Wn. App. 925, 936, 335 P.3d 1004 (2014); see also Freedom Found. v. Wash. State Dep't of Soc. & Health Servs., 9 Wn. App. 2d 654, 664, 445 P.3d 971 (2019) ("In an action challenging an agency's *denial* of a records request, a requester cannot initiate a lawsuit until the agency has denied and closed the request at issue."), review denied, 194 Wn.2d 1017 (2020).

The second cause of action contemplated by the PRA is an action under RCW 42.56.550(2) for an agency's alleged failure to make a "reasonable

estimate" of the time required to respond or of the charges to produce copies.

The PRA expressly provides that a requester may seek judicial review by moving for an order directing the responsible agency to "show cause why it has refused to allow inspection or copying" (in the case of an action under RCW 42.56.550(1)), or "show that the estimate it provided is reasonable" (in the case of an action under RCW 42.56.550(2)). In both cases, the agency bears the burden of establishing its compliance with the PRA. RCW 42.56.550(1), (2). "[W]hether an agency complies with the PRA is a fact specific inquiry and must be decided on a case-by-case basis." Andrews v. Wash. State Patrol, 183 Wn. App. 644, 653, 334 P.3d 94 (2014).

"Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." RCW 42.56.550(4). "In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record." RCW 42.56.550(4).

Analysis

*Standard of Review*

This court "review[s] agency actions under the PRA de novo, taking into account the PRA's policy that 'free and open examination of public records is in the public's interest, even [though] examination may cause inconvenience or

embarrassment.'" Anderson v. Dept. of Soc. & Health Servs., 196 Wn. App. 674, 680-81, 384 P.3d 651 (2016) (second alteration in original) (quoting Neigh. All., 172 Wn.2d at 715); see also RCW 42.56.550(3) ("Judicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520 shall be de novo."). Where, as here, "the record consists only of affidavits, memoranda of law, and other documentary evidence," this court "stands in the same position as the trial court" and "is not bound by the trial court's findings on disputed factual issues." PAWS, 125 Wn.2d at 252-53.

Here, Strahm does not specify whether his claims are based on an improper denial under RCW 42.56.550(1) or a failure to provide a reasonable estimate under RCW 42.56.550(2). But the thrust of his contentions is that the County improperly denied him access to responsive records for various reasons, each of which is addressed below.

*Adequate Search*

Strahm first contends that the trial court erred by concluding that the County conducted an adequate search for responsive records. Because the record is not sufficiently developed to determine whether the County's search was adequate, we agree and remand to the trial court for further fact-finding.

"An adequate search is a prerequisite to an adequate response." Neigh. All., 172 Wn.2d at 724. Thus, an agency's failure to perform an adequate search "is comparable to a denial because the result is the same," and an inadequate search is an actionable violation of the PRA. Neigh. All., 172 Wn.2d at 721, 724-25 (holding that an inadequate search is a violation of the PRA and "[a] prevailing

party in such an instance is at least entitled to costs and reasonable attorney fees," but expressly declining to decide "whether the PRA supports a freestanding daily penalty when an agency conducts an inadequate search but no responsive documents are subsequently produced").

In Neighborhood Alliance, our Supreme Court held that the standard for an adequate search under the PRA is the same as it is under the federal Freedom of Information Act and described that standard as follows:

> [T]he focus of the inquiry is not whether responsive documents do in fact exist, but whether the search itself was adequate. The adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents. What will be considered reasonable will depend on the facts of each case. When examining the circumstances of a case, then, the issue of whether the search was reasonably calculated and therefore adequate is separate from whether additional responsive documents exist but are not found. . . .
> . . . . This is not to say, of course, that an agency must search *every* possible place a record may conceivably be stored, but only those places where it is *reasonably likely* to be found.

Neigh. All., 172 Wn.2d at 719-20 (citations omitted). To establish that it conducted an adequate search, "the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith." Neigh. All., 172 Wn.2d at 721. These affidavits "should include the search terms and the type of search performed, and they should establish that all places likely to contain responsive materials were searched." Neigh. All., 172 Wn.2d at 721.

Here, the County submitted several affidavits in response to the trial court's order to show cause, but none of them describe the County's search process or establish "that all places likely to contain responsive materials were searched." Neigh. All., 172 Wn.2d at 721. Thus, the record was not sufficiently

developed for the trial court to determine whether the County's search was adequate, and remand is required for further findings. Cf. O'Neill v. City of Shoreline, 145 Wn. App. 913, 936, 187 P.3d 822 (2008) (remanding to trial court to determine whether search of hard drive would yield additional responsive records where appellate court could not make that determination on the record provided), aff'd in part and rev'd in part on other grounds, 170 Wn.2d 138, 240 P.3d 1149 (2010).

The County asserts that it conducted an adequate search with regard to request K019782 because "[b]ased on the plain language of Mr. Strahm's request, he sought records related to transactions that originated out of the Snohomish County Treasurer's Office" and "he was provided with records from that office." But this assertion is not supported by citation to the record, and nothing in the "plain language" of request K019782 even mentions the Treasurer's Office. Moreover, although the County could have filed an affidavit explaining that the Treasurer's Office was the only place reasonably likely to contain responsive documents for Strahm's request, it did not. Similarly, with regard to request K024672, the County's assertion that its search was adequate because it "located its records that documented every transaction related to the federal disaster funding" is entirely conclusory and provides no basis to assess the adequacy of the County's search. The County's conclusory assertions do not establish that its searches were adequate.

*Silent Withholding*

Strahm next argues that the trial court erred by concluding that the County

did not silently withhold responsive records. As further discussed below, we reject Strahm's argument with regard to request K019782. With regard to request K024672, however, the record is not sufficiently developed to resolve Strahm's silent withholding claim, and remand is required for further fact-finding.

Under the PRA, a responsive record "is never exempt from disclosure; it can be exempt only from production." Sanders v. State, 169 Wn.2d 827, 836, 240 P.3d 120 (2010). Thus, an agency violates the PRA when it "silently withholds" a responsive record either without disclosing its existence or without specifying the exemption that the agency claims applies. See Zink v. City of Mesa, 162 Wn. App. 688, 711, 256 P.3d 384 (2011) (failure to reveal that records have been withheld in their entirety); Sanders, 169 Wn.2d at 846 (failure to specify and give a brief explanation of each exemption).[5]

Here, Strahm first argues that the County silently withheld nonexempt records that were responsive to request K019782 and located in the Treasurer's Office. In support of this argument, Strahm cites to his e-mail exchange with Sperline in October 2018, after the County indicated it had closed request K019782. Specifically, on October 9, 2018, Strahm requested that the County "[p]lease promptly make responsive paper and electronic records available for inspection." Sperline responded:

> We interpreted your request to be seeking transactions from the items marked by the red rectangles. Those marked transactions stemmed out of the Treasurer's Office. That is where the responsive records were located. Accordingly, the Treasurer's Office's search for and production of records in response to this

---

[5] Strahm addresses silent withholding and failure to specify an exemption as two separate issues in his brief; we treat them here as one.

23

request is complete. I will note that there are paper bank statements responsive to this request but you previously instructed us not to produce paper bank statements.

Strahm asserts that Sperline's e-mail establishes that the County silently withheld responsive paper bank records that were located in the Treasurer's Office. But the only reasonable interpretation of Sperline's e-mail is that the responsive records located in the Treasurer's Office either had been produced already or consisted of paper bank statements that Strahm previously indicated he no longer wanted. Therefore, the County did not silently withhold records responsive to request K019782.

Strahm disagrees. In his reply brief, he contends that the County's claim that he amended his request to exclude paper records is false. But Strahm does not dispute that when he inspected paper bank statements on May 31, 2018, he informed O'Neill that he "no longer wished to receive 'non-electronic paper records.'" O'Neill confirmed this by e-mail on June 6, 2018, writing, "At your May 31st inspection, you amended your requests and advised you no longer wished to receive[ ] non-electronic bank records." Strahm neither clarified nor corrected this statement with regard to request K019782. And although he now contends that "the County should have scanned the paper records . . . into an electronic format and provided the records to [him] on CD," he points to nothing in the record to show that he communicated this request to the County. Instead, he sowed additional confusion by not being specific about what he believed was missing when the County later requested clarification. Therefore, Strahm's contention fails. Cf. Bonamy v. City of Seattle, 92 Wn. App. 403, 409, 960 P.2d

24

447 (1998) ("The [PRA] does not . . . require public agencies to be mind readers.").

Strahm next points out that the reason he no longer wanted paper records was because the paper records produced by the County "'contained transactions that were not responsive to [his] requests.'" But as Sievers explained in his declaration, there is no "one-to-one" relationship between the subfund transactions selected by Strahm in request K019782 and the bank statements reflecting those transactions. Additionally, and to the extent that Strahm is arguing that the County should have explained its bank statements to him, we reject that argument because the PRA "does not require agencies to . . . explain public records, but only to make those records accessible to the public." Bonamy, 92 Wn. App. at 409.

Finally, Strahm points out that in November 2018, after he filed suit, he inspected daily bank statements produced by the County in response to the K019782 Follow-up Request, and that a page of those bank statements was responsive to request K019782. Strahm seems to suggest that the existence of this responsive bank statement is evidence of the County's silent withholding. But the K019782 Follow-up Request was a request for paper records that Strahm himself had earlier indicated he no longer wanted. Therefore, that the County ultimately produced a paper bank statement that would have been responsive to request K019782 does not support Strahm's argument that the County silently withheld responsive records.

Turning to request K024672, Strahm contends that the County silently

25

withheld 13 pages of warrants that were later produced in response to a different request. In support of his contention, Strahm points out that request K024672 expressly referred to "warrants, checks, wire transfer[s], electronic payments, etc." He then asserts that the 13 pages of warrants produced in response to his later request were also responsive to request K024672.

The County did not respond to this assertion, either below or on appeal. Therefore, the record is not sufficiently developed to determine whether those 13 warrants were, in fact, responsive to request K024672. Furthermore, and as already discussed, the record is not sufficiently developed to determine whether the County's search was adequate. Thus, the record also is not sufficiently developed to determine whether, if those warrants *were* responsive to request K024672, they should have been disclosed. Accordingly, remand is required for further fact-finding as to whether the County silently withheld records responsive to request K024672.

The County contends that it "is not withholding records, silent or otherwise." It points out that in the letter accompanying the CD produced in response to request K024672, the County "explicitly informed Mr. Strahm that it believed the records provided in response to K024672 fulfilled his request" and told him that "if he was looking for additional records, he needed to contact the County within 30 days." The County asserts that Strahm's failure to timely clarify his request vitiates his silent withholding claim. But Strahm's request clearly included a request for warrants. Thus, even assuming that the County's letter

constituted a valid request for clarification,[6] Strahm's failure to respond has no bearing on whether the County silently withheld the warrants in the first instance. The County's assertion lacks merit.

*Fee for Inspection*

Strahm contends that the County violated the PRA by requiring him to pay a fee to inspect records in response to request K019782. We disagree.

Under RCW 42.56.120(1), "[n]o fee shall be charged for the inspection of public records or locating public documents and making them available for copying," except under certain exceptions that do not apply here. Accordingly, the County rightfully concedes that O'Neill was mistaken when she initially told Strahm that he would be required to pay a fee to inspect bank records responsive to request K019782. But because O'Neill voluntarily cured her error a short time later, we conclude that no PRA violation occurred.

Hobbs is instructive. In Hobbs, Mike Hobbs requested records from the State Auditor's Office (Auditor). 183 Wn. App. at 928. Two days after the Auditor made a first installment of records available to Hobbs, Hobbs filed suit against the Auditor for alleged PRA violations relating to redactions in the first installment. Hobbs, 183 Wn. App. at 932. The Auditor subsequently provided a corrected copy of the documents that included explanatory "code numbers," which had been omitted from the first production, to explain the redactions. Hobbs, 183 Wn. App. at 930, 932 n.4. The superior court concluded that Hobbs

---

[6] Strahm contends that if the County believed Strahm's request was unclear, then it should have asked for clarification when it initially responded to the request instead of waiting until it produced the CD.

did not have a cause of action as to the initial production. Hobbs, 183 Wn. App. at 932.

On appeal, Hobbs contended that "any violations in the original installment were violations at the time they occurred and that he was entitled to penalties regardless of whether the violations were later corrected." Hobbs, 183 Wn. App. at 935. We disagreed and held that "before a requester initiates a PRA lawsuit against an agency, there must be some agency action, or inaction, indicating that the agency will not be providing responsive records." Hobbs, 183 Wn. App. at 936. We concluded that there was no such action or inaction in Hobbs's case. Hobbs, 183 Wn. App. at 937. In doing so, we observed that the Auditor was continuing to provide Hobbs with responsive records for some time after it initially produced the first installment; that the Auditor voluntarily cured the alleged violation; and that Hobbs did not dispute that by the time of the trial court's final hearing, all issues had been cured. Hobbs, 183 Wn. App. at 936, 940.

Here, like the Auditor in Hobbs, O'Neill voluntarily cured her mistake a short time after she initially told Strahm that a deposit would be required to inspect bank records responsive to request K019782. To be sure, O'Neill should have been more transparent about her initial error, and she likely caused unnecessary confusion when she first indicated that a fee would be required and then, without any explanation, wrote Strahm again to inform him that the County would begin preparing the responsive bank records for inspection. She also injected confusion when, between these two communications, she sent Strahm an e-mail indicating that the County planned to close request K019782 because

all responsive records had been produced. Nevertheless, it is undisputed that O'Neill voluntarily cured her error, that the cure was made while the request remained open, and that by the time Strahm filed suit, the records the County considered responsive had been made available for his inspection without a fee. Furthermore, none of the authorities that Strahm cites support his contention that O'Neill's voluntarily cured mistake remains an actionable violation.[7] For these reasons, we reject that contention.

### Production in Lieu of Inspection

Although the County does not acknowledge or respond to this argument, Strahm seems to suggest that because he expressly requested that responsive records for request K024762 be made available for *inspection*, the County violated the PRA by instead *producing* them on a CD. But it is undisputed that Strahm picked up the CD, that he was charged only 35 cents for it, and that he reviewed the documents thereon. And Strahm does not cite any authority

---

[7] In Cedar Grove Composting, Inc. v. City of Marysville, we concluded that even though the City ultimately produced unredacted versions of certain e-mails before litigation, the requester still had a cause of action for the City's initial refusal to produce the e-mails based on its improper reliance on the attorney-client privilege. 188 Wn. App. 695, 715, 354 P.3d 249 (2015). But there, the cure was not voluntarily. Rather, the City produced unredacted versions only after the requester *twice* called into question the City's reliance on the privilege. Cedar Grove, 188 Wn. App. at 704-05. We distinguished Hobbs on that basis, observing that the City initially responded by reiterating its initial claim of privilege, "thus denying the request." Cedar Grove, 188 Wn. App. at 715. This case is similarly distinguishable, and thus, any reliance on Cedar Grove is misplaced. Strahm's reliance on Neighborhood Alliance is also misplaced because there, the agency "refused to produce anything at all," 172 Wn.2d at 727, whereas here, the County did not refuse production but only asserted, mistakenly, that a fee would be required. And Yousoufian v. Office of Ron Sims, where the sole issue was the amount of the penalty, is similarly unpersuasive. 168 Wn.2d 444, 450, 229 P.3d 735 (2010).

supporting the proposition that the County violated the PRA merely by producing records electronically, at minimal cost, instead of making them available for inspection. Therefore, we reject Strahm's argument.

*Fullest Assistance*

As a final matter, Strahm contends that reversal is required because the County violated the PRA by failing to provide "fullest assistance." We disagree.

Strahm relies on RCW 42.56.100 to support his argument. That statute provides that "[a]gencies shall adopt and enforce reasonable rules and regulations . . . consonant with the intent of this chapter to provide full public access to public records" and that "[s]*uch rules and regulations shall provide for the fullest assistance to inquirers.*" RCW 42.56.100 (emphasis added). In other words, the phrase "fullest assistance" technically refers to the agency's rules and regulations. Freedom Found., 9 Wn. App. 2d at 673. "Nevertheless, courts have recognized that agencies are required to comply with the principles embodied in RCW 42.56.100." Freedom Found., 9 Wn. App. 2d at 673.

Here, Strahm argues that the County failed to provide fullest assistance and "unreasonably delayed" fulfilling his requests by (1) denying him the "opportunity to inspect responsive records," (2) not performing an adequate search, (3) withholding nonexempt responsive records, and (4) failing to "properly respond[ ]" to his requests. Strahm's argument is unpersuasive for three reasons.

First, the first three of Strahm's contentions above merely repeat his other contentions, and Strahm does not cite any authority supporting the proposition

that a failure to provide fullest assistance is an independently actionable PRA violation.

Second, Strahm's final contention that the County did not "properly respond[ ]" to his requests does not specify the alleged impropriety that serves as the basis of his "fullest assistance" claim. Thus, it is too conclusory to warrant reconsideration. See West v. Thurston County, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) ("We do not consider conclusory arguments that do not cite authority."); see also Holland v. City of Tacoma, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

Finally, although Strahm cites, in passing, Kittitas County v. Allphin, 195 Wn. App. 355, 381 P.3d 1202 (2016), aff'd, 190 Wn.2d 691, 416 P.3d 1232 (2018), and Mechling v. City of Monroe, 152 Wn. App. 830, 222 P.3d 808 (2009), his reliance on those cases is misplaced: Kittitas County's discussion of "fullest assistance" is in the unpublished part of that opinion and, therefore, is not persuasive. As for Mechling: There, the requester contended that based on the duty to provide "fullest assistance," the city of Monroe was obligated to provide certain e-mails in electronic, rather than paper, format. Mechling, 152 Wn. App. at 838, 847. We concluded that the City had no express obligation to provide the e-mails electronically. Mechling, 152 Wn. App. at 850. But "consistent with the statutory duty to provide the fullest assistance," we directed the trial court to, on remand, determine whether it would be reasonable and feasible for the City to produce additional, unredacted e-mails electronically. Mechling, 152 Wn. App. at

31

850. We did not, however, address whether a refusal to do so would result in an actionable PRA violation. Thus, Mechling is inapposite here: That an agency should consider the reasonableness and feasibility of producing records in a desired format does not support Strahm's argument that under the circumstances of this case, the County violated the PRA by failing to provide fullest assistance.

We vacate the trial court's dismissal of Strahm's case and its conclusions that the County complied with the PRA, conducted an adequate search for records and, with regard to request K024672, did not silently withhold records. We remand to the trial court for further proceedings consistent with this opinion, including determining (1) whether the County performed an adequate search with regard to both of Strahm's requests, (2) whether the County silently withheld records responsive to request K024672, (3) whether the County complied with the PRA, and (4) if appropriate, the amount of any costs and monetary penalties.

_Smith, J._

WE CONCUR:

_Bowman, J._

_Andrus, J._